UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CAROLE LEE MCQUADE,

                Plaintiff,

v.                                                                                  Case No. 3:14-CV-1044 (GTS)

CAROLYN W. COLVIN,
Commissioner of Social Security,

                Defendant.
_____

APPEARANCES:                                              OF COUNSEL:

BINDER & BINDER                               CHARLES E. BINDER, ESQ.
  Counsel for Plaintiff
60 East 42nd Street, Suite 520
New York, NY 10165

U.S. SOCIAL SECURITY ADMIN.             LAUREN E. MYERS, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

      Currently before the Court, in this Social Security action filed by Carole Lee McQuade ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 10-11.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is denied and Defendant's motion for judgment on the pleadings is granted.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born on September 3, 1974. She completed the 11th grade of high school. Plaintiff has worked as a receptionist and ticket agent. Generally, Plaintiff's alleged disability consists of a lower back injury and depression. Plaintiff's alleged disability onset date is December 10, 2007, and her date last insured is December 31, 2012.

### B. Procedural History

On June 17, 2009, Plaintiff applied for Social Security Disability Insurance Benefits. Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On October 27, 2010, Plaintiff appeared before the ALJ, Edward I. Pitts. (T. 89-134.) On January 21, 2011, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 137-55.) On July 19, 2012, the Appeals Council remanded the case for further proceedings. (T. 156-59.) On February 28, 2013, Plaintiff appeared by video for a second hearing before the ALJ. (T. 42-88.) On April 3, 2013, the ALJ issued a second written decision finding Plaintiff not disabled. (T. 19-41.) On June 23, 2014, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-7.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following six findings of fact and conclusions of law. (T. 19-41.) First, the ALJ found that Plaintiff met the insured status requirements through December 31, 2012, and had not engaged in substantial gainful activity since July 12, 2009, her

alleged onset date. (T. 24, 31.) Second, the ALJ found that Plaintiff's low back degenerative disc disease is a severe impairment, but that Plaintiff's right ankle fracture and psychological disorder are not severe impairments. (T. 24-25.) Third, the ALJ found that Plaintiff's severe impairments, alone or in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. (T. 26.) The ALJ considered Listing 1.04. (*Id.*) Fourth, the ALJ found that Plaintiff

> had the residual functional capacity ["RFC"] to lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk two hours in an eight-hour day, sit six hours in an eight-hour day, and occasionally climb, balance, stoop, kneel, crouch, and crawl. She could stand or sit up to one hour at a time before changing positions and could change positions while remaining at the workstation.

(T. 27.) Fifth, the ALJ found that Plaintiff is able to perform her past relevant work as a receptionist and ticket agent. (T. 31.) Sixth, and finally, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T. 32.)

### D. The Parties' Briefings on Their Cross-Motions

Plaintiff makes two arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues that the ALJ erred in weighing the medical evidence of record, and that the ALJ's RFC is unsupported by substantial evidence. (Dkt. No. 10, at 16-22 [Pl.'s Mem. of Law].) Second, and finally, Plaintiff argues that the ALJ erred in evaluating Plaintiff's credibility. (*Id*. at 22-25.)

Defendant makes two arguments in support of her motion for judgment on the pleadings. First, Defendant argues that the ALJ properly weighed the medical evidence in evaluating the RFC. (Dkt. No. 11, at 5-9 [Def.'s Mem. of Law].) Second, and finally, Defendant argues that the ALJ properly evaluated Plaintiff's credibility. (*Id.* at 10-12.)

## II. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.     Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. § 404.1520. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## III. ANALYSIS

### A. Whether the ALJ Erred in Weighing the Opinions of Dr. Fang, Dr. Stradley, and Dr. Magurno Regarding Plaintiff's Functional Limitations

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 13, at 5-7 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

The ALJ must consider every medical opinion of record. 20 C.F.R. § 404.1527(c). Under the "treating physician's rule," controlling weight is given to a plaintiff's treating physician's opinion when (1) the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) the opinion is consistent with other substantial evidence in the record, such as opinions of other medical experts. 20 C.F.R. § 404.1527(c)(2); *Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir. 2004); *Brogan-Dawley v. Astrue*, 484 F. App'x 632, 633-34 (2d Cir. 2012). When controlling weight is not given to the opinion of a treating physician, the ALJ should consider the following factors to determine the proper weight assigned to a treating physician's opinion: (1) the frequency of the examinations and the length, nature and extent of the treatment relationship; (2) the evidence in support of the opinion; (3) the opinion's consistency with the record as a whole; and (4) whether the opinion is from a specialist. 20 C.F.R. § 404.927(c); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir.2000). Regulations require an ALJ to set forth his or her reasons for the weight assigned to a treating physician's opinion. *Shaw*, 221 F.3d at 134.

When controlling weight is not given to the opinion of a treating physician, an ALJ's failure to explain the weight given to the opinion of other treating sources or a State agency medical consultant is legal error. *Richardson v. Barnhart*, 443 F. Supp. 2d 411, 425 (W.D.N.Y.

2006); *see also Stytzer v. Astrue*, 07-CV-0811, 2010 WL 3907771, at *7 (N.D.N.Y. Sept. 30, 2010) ("Unless the treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for [the agency]."); *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d 288, 295 (W.D.N.Y. 2006) (finding that, because the ALJ failed to afford the treating physician's opinion controlling weight, the opinion of the consultative examiner "takes on particular significance").

### 1. Treating Pain Management Physician Dr. Xio Fang, M.D.

On October 6, 2010, Plaintiff's treating pain management specialist, Dr. Fang, opined that Plaintiff could occasionally lift and/or carry 20 pounds, could sit for four hours, and could stand/walk for two hours in an eight-hour workday. (T. 724.) However, Dr. Fang opined that Plaintiff could not sit continuously in a work setting, and must get up and move around for five minutes every 30 minutes. (T. 725.) Dr. Fang opined that Plaintiff should avoid heights and should not push, pull, kneel, bend, or stoop. (T. 727.) Dr. Fang opined that Plaintiff would frequently experience pain or other symptoms severe enough to interfere with attention and concentration, and would be absent from work more than three times a month. (T. 726-27.) Dr. Fang opined that emotional factors, specifically anxiety and depression, would contribute to the severity of Plaintiff's symptoms and functional limitations, but that Plaintiff would be able to perform low stress work. (T. 726.)

The ALJ assigned significant to limited weight to Dr. Fang's opinion. (T. 29). The ALJ assigned significant weight to Dr. Fang's opinion regarding Plaintiff's abilities to stand or walk two hours in a workday and lift and carry up to 20 pounds, noting Dr. Fang's treating relationship with Plaintiff and other record evidence supporting these limitations. (T. 29.) However, the ALJ assigned limited weight to Dr. Fang's opinion regarding Plaintiff's limited abilities to sit, push, pull, kneel, bend, and stoop, and Dr. Fang's conclusions regarding Plaintiff's attention and concentration, work stress capabilities, and likely absences from work. (T. 29).

The Court finds that the ALJ's assessment of Dr. Fang's opinion was proper for the following three reasons. First, the ALJ reasoned that Dr. Fang's opinion that Plaintiff was completely unable to push, pull, kneel, bend, or stoop was inconsistent with Plaintiff's reported activities. (T. 29.) For example, the ALJ noted that Plaintiff reported she could sit or stand for one hour at a time. (T. 29.) The ALJ further noted that, despite not having pain medication, in February 2013, the Plaintiff reported preparing food, cleaning, driving, shopping with her husband, caring for her four-year-old autistic daughter, and occasionally volunteering as a head start worker. (T. 30.)

Second, the ALJ reasoned that the evidence of record did not support limiting Plaintiff to four hours of sitting in an eight-hour day or Plaintiff being absent from work more than three times a month. (T. 29.) For example, the ALJ noted that an MRI of Plaintiff's lumbar spine, on October 17, 2011, evidenced no residual or recurrent disc herniation or neural compression following her 2010 lumbar discectomy surgery. (T. 30.) The ALJ further noted that an MRI, on March 26, 2012, showed that Plaintiff's lumbar spine appeared stable. (T. 30.) The ALJ noted that, on May 2, 2012, Dr. Fang indicated that an electrodiagnostic study revealed no evidence of

8

peripheral neuropathy. (T. 30.) The ALJ noted that, on November 29, 2011, examining physician, Saeed A. Bajwa, M.D., observed that Plaintiff walked without acute distress or limp, had negative straight-leg raising tests, and had no focal motor or sensory deficits except for slight numbness in the left S1 dermatome. (T. 30.)

Third, the ALJ reasoned that the evidence of record did not support Dr. Fang's conclusions regarding Plaintiff's attention and concentration or work stress capabilities. (T. 29.) At step two, the ALJ found that Plaintiff had mild limitations in the area of concentration, persistence, or pace, noting that Plaintiff "reported no problems paying attention, being able to follow both spoken and written instructions, and remembering things." (T. 26.) The ALJ noted that consultative examiner, Mary Ann Moore, Psy. D., observed that Plaintiff's attention and concentration were intact. (T. 26.)

For the reasons above, the ALJ's assessment of Dr. Fang's opinion was proper.

## 2. Treating Primary Care Physician Dr. Shelly L. Stradley, D.O.

On February 24, 2011, Dr. Stradley opined that Plaintiff could sit up to one hour and stand/walk one hour in an eight-hour workday. (T. 812.) However, Dr. Stradley opined that Plaintiff could not sit or stand/walk continuously, but must get up and move around for 15 minutes every 15 to 30 minutes. (T. 812, 814.) Dr. Stradley opined that Plaintiff could lift or carry up to 20 pounds occasionally and 10 pounds frequently, and had moderate limitations reaching above her head. (T. 815.) Dr. Stradley opined that Plaintiff could not sit at a desk, and could not push, pull, kneel, bend, or stoop. (T. 814-15.) Dr. Stradley opined that Plaintiff's symptoms were frequently severe enough to interfere with attention and concentration, and that Plaintiff would likely miss more than three workdays per month. (T. 815.) Dr. Stradley opined that Plaintiff had psychological limitations, but could perform low stress work. (T. 815-16.)

9

On October 23, 2012, Dr. Stradley once again opined that Plaintiff could sit up to one hour and stand/walk one hour in an eight-hour workday. (T. 933.) Dr. Stradley opined that Plaintiff could not sit or stand/walk continuously, but must get up and move around for ten to fifteen minutes every ten to fifteen minutes. (T. 933-34.) Dr. Stradley opined that Plaintiff could lift up to twenty pounds occasionally and up to five pounds frequently, could carry up to ten pounds occasionally and up to five pounds frequently, and had minimal limitations reaching above her head. (T. 934-35.) Dr. Stradley opined that Plaintiff could not sit at a desk, push, pull, kneel, bend, or stoop. (T. 937.) Dr. Stradley opined that Plaintiff's symptoms were frequently severe enough to interfere with attention and concentration, and that Plaintiff would likely miss more than three workdays per month. (T. 936.) Dr. Stradley opined that Plaintiff had psychological limitations, but could perform low stress work. (T. 936-37.)

The ALJ afforded no weight to the February 2011 and October 2012 opinions of Dr. Stradley, reasoning that the opinions were inconsistent with other medical reports in the record, were not supported by Dr. Stradley's clinical examinations and treatment notes, and appeared to be based on Plaintiff's reports rather than medical evaluations. (T. 30-31.) For example, the ALJ cited Dr. Stradley's July 21, 2011, treatment note that cleared Plaintiff to provide childcare and participate as a head start volunteer and only indicated one limitation, that Plaintiff should avoid lifting more than 30 pounds. (T. 30.) The Court notes that, on the same date, Dr. Stradley observed that Plaintiff's balance and gait were in tact, and that Plaintiff had no motor weakness or sensory loss. (T. 975.) Dr. Stradley further observed that Plaintiff was alert and oriented, had normal attention span and concentration, and exhibited normal judgment. (T. 975.) Finally, Dr. Stradley observed that Plaintiff was not anxious, and had no mood swings, pressured speech, or suicidal ideation. (T. 975.)

The ALJ considered objective evidence and clinical findings that were inconsistent with Dr. Stradley's opinions. (T. 30.) For example, the ALJ noted that, on October 17, 2011, an MRI of Plaintiff's lumbar spine evidenced no residual or recurrent disc herniation or neural compression following her 2010 lumbar discectomy surgery. (T. 30.) The ALJ further noted that, on March 26, 2012, an MRI showed that Plaintiff's lumbar spine appeared stable. (T. 30.) The ALJ noted that, on May 2, 2012, an electrodiagnostic study revealed no evidence of peripheral neuropathy. (T. 30.) The ALJ noted that, on November 29, 2011, treating neurosurgeon, Saeed A. Bajwa, M.D., observed that Plaintiff walked without acute distress or limp, had negative straight-leg raising tests, and had no focal motor or sensory deficits except for slight numbness in the left S1 dermatome. (T. 30.)

Based on this evidence, the ALJ's determination that Dr. Stradley's opinions were entitled to no weight was supported by substantial evidence because her opinions were inconsistent with both her own treatment notes and other medical evidence of record.

### 3. Consultative Orthopedic Examiner Dr. Justine Magurno, M.D.

On September 28, 2009, consultative orthopedic examiner, Dr. Magurno, opined that Plaintiff had marked limitations in walking, standing, sitting, squatting, reaching, pushing, and pulling. (T. 622.) Dr. Magurno further opined that Plaintiff should avoid lifting and carrying, uneven ground, heights, and ladders. (T. 622.)

The ALJ assigned limited weight to Dr. Magurno's opinion, reasoning that the opinion was based on a one-time examination, that Plaintiff's presentation at the consultative examination was inconsistent with her typical presentation at treating medical provider office visits, and that the marked limitations opined by Dr. Magurno were not supported by her

11

objective clinical findings, but appeared to be based primarily on the claimant's subjective reports of pain. (T. 28.) The ALJ further reasoned that the limitations opined by Dr. Magurno were inconsistent with Plaintiff's activities and medical treatment history. (T. 28.) For example, the ALJ cited Dr. Magurno's examination notes that Plaintiff reported cooking every night with her husband, doing laundry with her husband, shopping with her husband, meeting her own personal care needs, and taking care of her daughter. (T. 28.) Elsewhere in the decision, the ALJ noted that Plaintiff had not seen her primary treating physician, Dr. Stradley, or received any pain medications since at least October 2012. (T. 30.) The ALJ further noted that, despite not having pain medication, in February 2013, the Plaintiff reported preparing food, cleaning, driving, shopping with her husband, caring for her four-year-old autistic daughter, and occasionally volunteering as a head start worker. (T. 30.)

Additionally, the Court notes that Dr. Magurno's consultative examination predated Plaintiff's lumbar L5-S1 hemilaminotomy and microdiscectomy surgery on May 18, 2010. (T. 29.) Further, Plaintiff declined a number of tests during Dr. Magurno's consultative examination, including all range of motion tests of her thoracic and lumbar spines, which prevented a meaningful assessment of Plaintiff's functional limitations resulting from her severe low back degenerative disc disease. (T. 619-22.) Therefore, the ALJ's assessment of Dr. Magurno's opinion was supported by substantial evidence.

Finally, the ALJ properly applied the Regulations in evaluating the opinions of Dr. Fang, Dr. Stradley, and Dr. Magurno. As discussed above, the ALJ considered each physician's examining or treating relationship with Plaintiff and cited inconsistencies between each physician's opinion and other medical evidence in the record pursuant to 20 C.F.R. § 404.1527(c). (T. 29-31.) Where, as here, an ALJ's reasoning and adherence to the Regulations

12

are clear, the ALJ is not required to review explicitly each and every factor of the Regulation. *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (holding that, where plaintiff challenged ALJ's failure to review explicitly each factor provided for in 20 C.F.R. § 404.1527[c], "no such slavish recitation of each and every factor [was required] where the ALJ's reasoning and adherence to the regulation [was] clear").

For these reasons, the ALJ did not err in weighing the opinions of Plaintiff's functional limitations provided by Dr. Fang, Dr. Stradley, and Dr. Magurno. Accordingly, remand is not necessary on this basis.

### B. Whether the ALJ Erred in Assessing Plaintiff's RFC

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 11, at 5-9 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

RFC is defined as

> what an individual can still do despite his or her limitations . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A regular and continuing basis means 8 hours a day, for 5 days a week, or an equivalent work schedule.

*Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2). "In assessing a claimant's RFC, the ALJ must consider all of the relevant medical and other evidence in the case record to assess the claimant's ability to meet the physical, mental, sensory and other requirements of work." *Domm v. Colvin*, 12-CV-6640, 2013 WL 4647643, at *8 (W.D.N.Y. Aug. 29, 2013). The ALJ is required to consider medical opinions and facts, physical and mental abilities, non-severe impairments, and the plaintiff's subjective evidence of

symptoms. 20 C.F.R. § 404.1545(a)-(e). The ALJ must consider RFC assessments made by acceptable medical sources, and the ALJ may consider opinions from other non-medical sources to show how a claimant's impairments may affect his ability to work. 20 C.F.R. § 404.1513(c)-(d). Finally, an ALJ's RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

Here, the ALJ determined that Plaintiff could lift and/or carry 20 pounds occasionally and ten pounds frequently, stand and/or walk two hours, and sit six hours in an eight-hour workday. (T. 27.) The ALJ determined that Plaintiff could stand or sit up to one hour at a time before changing positions, could change positions while remaining at the workstation, and could occasionally climb, balance, stoop, kneel, crouch, and crawl. (T. 27.) The ALJ reasoned that his RFC determination is supported by Plaintiff's activities, Plaintiff's acknowledgment that she could stand and sit for one hour at a time, the limited positive objective medical findings, Dr. Fang's October 6, 2010, opinion discussed above in Part III.A.1. of this Decision and Order, and Dr. Stradley's July 21, 2011, assessment discussed above in Part III.A.2. of this Decision and Order. (T. 31.) Further, the ALJ reasoned that his RFC determination is supported by the September 29, 2010, functional capacity evaluation performed by examining physical therapist, J. Todd Mansfield, P.T., finding that Plaintiff could perform light work with a maximum lifting capacity of 20 pounds on an occasional basis, should avoid regular lifting and bending, and would need to change static positions every 30 minutes. (T. 31, 788.)

A physical therapist is not an acceptable medical source under Social Security Regulations, however a physical therapist is an "other source" whose opinion the ALJ may consider regarding the severity of a plaintiff's impairment and how it affects a plaintiff's ability

14

to work. *Sixberry v. Colvin*, 12-CV-1231, 2013 WL 5410209, at *8 (N.D.N.Y. Sept. 20, 2013) (Suddaby, J.); *Luffman v. Comm'r of Soc. Sec.*, 12-CV-0317, 2013 WL 1386639, at *7 (N.D.N.Y Mar. 14, 2013) (Mordue, J.) (citing 20 C.F.R. § 404.1513[a]). Opinions from medical sources that are not considered acceptable medical sources, such as physical therapists, are "important and should be evaluated on key issues such as impairment severity and functional effects." *Anderson v. Astrue*, 07-CV-2969, 2009 WL 2824584, at *9 (E.D.N.Y. Aug. 28, 2009). The Regulations provide that evidence from "other sources" may be considered "to show the severity of [a plaintiff's] impairment(s) and how it affects [a plaintiff's] ability to work." 20 C.F.R. § 404.1513(d). In weighing the opinions of "other sources," the ALJ must use the same factors for evaluating the opinions of "acceptable medical sources" enumerated in 20 C.F.R. § 404.1527(c). *Sixberry*, 2013 WL 5410209, at *9; *Canales v. Comm'r of Soc. Sec.*, 698 F. Supp. 2d 335, 344 (E.D.N.Y. 2010). The ALJ "has the discretion to determine the appropriate weight to accord the [other source's] opinion based on all the evidence before him." *Acevedo v. Colvin*, 20 F. Supp. 3d 377, 389 (W.D.N.Y. 2014) (quoting *Diaz v. Shalala*, 59 F.3d 307, 314 (2d Cir. 1995) (internal quotation marks omitted).

Here, the ALJ assigned significant weight to Mr. Mansfield's functional capacity evaluation, reasoning that it was based on actual testing and was consistent with Plaintiff's activities. (T. 29.) The ALJ reasoned that "[d]espite evidence of inconsistent and submaximal effort during the testing, the results of that evaluation indicated that the claimant was capable of returning to light work" with the additional limitations discussed above. (T. 31.) Further, the ALJ cited objective evidence and clinical findings that were consistent with Mr. Mansfield's evaluation and the ALJ's RFC determination that Plaintiff could perform sedentary work. (T. 27, 30.)

15

For example, the ALJ noted that an October 17, 2011, MRI of Plaintiff's lumbar spine evidenced no residual or recurrent disc herniation or neural compression following her 2010 lumbar discectomy surgery. (T. 30.) The ALJ further noted that a March 26, 2012, MRI showed that Plaintiff's lumbar spine appeared stable. (T. 30.) The ALJ noted that, on November 29, 2011, Dr. Bajwa observed that Plaintiff walked without acute distress or limp, had negative straight-leg raising tests, and had no focal motor or sensory deficits except for slight numbness in the left S1 dermatome. (T. 30.) The ALJ noted that, on May 2, 2012, Dr. Fang observed that an electrodiagnostic study revealed no evidence of peripheral neuropathy. (T. 30.) Additionally, the ALJ's determination regarding Plaintiff's standing, walking, lifting, and carrying abilities was supported by the portions of Dr. Fang's opinion that the ALJ afforded significant weight. (T. 29.)

For these reasons, the ALJ's RFC determination is supported by substantial evidence. Therefore, remand is not necessary on this basis.

### C. Whether the ALJ Erred in Assessing Plaintiff's Credibility

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 13, at 5-16 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

A plaintiff's allegation of pain is "entitled to great weight where . . . it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 [2d Cir. 1992]). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Montaldo v. Astrue*, 10-CV-6163, 2012 WL 893186, at *17 (S.D.N.Y. Mar. 15

2012). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id.* Further, "[i]t is the role of the Commissioner, not the reviewing court, 'to resolve evidentiary conflicts and to appraise the credibility of witnesses,' including with respect to the severity of a claimant's symptoms." *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (quoting *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 [2d Cir. 1983]).

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that her statements regarding the intensity, persistence and limiting effects of her symptoms are not fully credible. (T. 31.) In assessing Plaintiff's allegations of pain, the ALJ determined that Plaintiff's complaints are not

17

supported by the evidence of record, including medical evidence and examination notes as well as Plaintiff's physical activities and poor work history. (T. 31.)

First, the ALJ found that Plaintiff's allegations of pain were not well supported by the medical evidence, noting the limited positive objective medical findings in the record. (T. 31.) The ALJ cited record evidence suggesting that Plaintiff exaggerated her symptoms. (T. 31.) For example, the ALJ noted that Plaintiff exhibited marked positive Waddell signs, and that Dr. Chiaramonte concluded that there were "no positive objective findings noted on the examination to support" Plaintiff's subjective complaints. (T. 31.) The ALJ further noted that Dr. Schnek indicated that Plaintiff's pain was "way out of proportion" to the MRI results and that he did not have a good explanation for Plaintiff's degree of pain and disability. (T. 31.) Additionally, the ALJ noted that Plaintiff's functional capacity evaluation evidenced inconsistent and submaximum effort by the Plaintiff. (T. 31.)

Second, the ALJ found that Plaintiff's complaints of disabling symptoms and limitations are not consistent with her described physical activities. (T. 31.) For example, the ALJ noted Plaintiff's report that she could stand and sit for an hour at a time, and noted that Plaintiff "engaged in a vast array of activities of daily living, including taking care of her young daughter." (T. 31.) Finally, the ALJ reasoned that Plaintiff's "modest" work history does not support her credibility. (T. 31.)

For these reasons, the ALJ appropriately evaluated Plaintiff's credibility, and remand is not necessary on this basis.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 11) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying disability benefits is **AFFIRMED**; and it is further is

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: November 16, 2015
      Syracuse, New York

_____
Hon. Glenn T. Suddaby
Chief, U.S. District Judge